## RUPEL ET AL. *v.* OHIO OIL COMPANY ET AL.

[No. 21,873.　Filed May 23, 1911.　Rehearing denied June 2, 1911.]

1. APPEAL.—*Briefs.*—*Waiver.*—Assignments of errors upon which no points are made, nor authorities cited, in appellants' brief, are waived.　p. 7.

2. MINES AND MINERALS. — *Oil.* — *Real Property.* — *Character of Ownership of.*—Because of its wandering and vagrant character, oil is not regarded as the absolute property of an owner of land until it is subjected to his dominion.　pp. 7, 11.

3. MINES AND MINERALS.—*Real Property.*—*Ownership.*—*Life Tenants.*—*Remaindermen.*—The owner of the remainder in fee simple of land is entitled to the oil thereunder as against the owner of the life estate.　pp. 8, 12.

4. MINES AND MINERALS.—*Real Property.*—*Personalty.*—*When Becomes.*—Minerals severed from their connection with the earth become personal property.　p. 8.

5. INJUNCTION.—*Removing Oil from Land.*—*Damages.*—One having the exclusive right to take oil from land may enjoin a stranger from invading such right; or he may maintain an action for damages against anyone who has wrongfully taken such oil.　p. 8.

6. WASTE.—*Remedies.*—*Injunction.*—*Damages.*—At the early common law the writ of estrepement and prohibition of waste was used to prevent a threatened waste, and the writ of waste, for the recovery of damages committed; and these remedies have

been superseded, respectively, by injunction and by an action in damages. p. 10.

7. WASTE.—*Action for.*—*Defendants.*—At the common law the remainderman could not sue one claiming under the life tenant, or a stranger, for waste; but the modern action for damages lies against anyone who commits the waste. p. 10.

8. WASTE.—*Accounting.*—*Damages.*—Equity grants an accounting for past waste, even though an action for damages will not prove an adequate remedy, and though injunction will not be granted. p. 11.

9. APPEAL.—*Questions Decided.*—*Estoppel.*—On appeal from a judgment sustaining a demurrer to a complaint alleging that defendant wrongfully took oil from certain land the remainder in fee simple of which belonged to plaintiffs, and that plaintiffs did not know thereof until such oil had been taken, the question of estoppel because of knowledge does not arise, and will not be decided. p. 12.

10. APPEAL.—*Oral Argument.*—*Petition for.*—A petition for an oral argument of a cause on appeal, filed after the time for filing briefs, may be granted or denied at the discretion of the court. p. 12.

From Jay Circuit Court; *John F. LaFollette,* Judge.

Action by Martin L. Rupel and others against the Ohio Oil Company and others. From a judgment for defendants, plaintiffs appeal. Transferred from Appellate Court under §1405 Burns 1908, Acts 1901 p. 590. *Reversed.*

*S. A. D. Whipple* and *Emerson E. McGriff,* for appellants.

*Simmons & Dailey,* for appellees.

Cox, J.—Appellants Martin L. Rupel, Isaac Rupel, Jacob Rupel and Sarah Fields are, together with appellees James Rupel and Rachel Artwine, severally the owners of the remainder in fee simple, as tenants in common of a one-sixth interest in certain lands in Jay county. Appellee Mary Rupel, the mother, is the owner in possession of the life estate in these lands. As such life tenant in possession she, without the joining therein of the remaindermen sought to grant to the assignor of the appellee Ohio Oil Company, by contract in writing executed January 20, 1891, the exclusive right to enter upon these lands and explore for, and to re-

move therefrom, the oil and gas found. The contract contained the usual stipulations for cash payments and for royalties to be paid by the explorer to Mary Rupel, as to the right to lay pipes for oil and gas lines, the obligation to bury them and to pay damages for injuries to timber and crops, to leave the fences and drains in as good condition as found, and as to locating wells so as to protect buildings on the premises.

Appellee Ohio Oil Company, as the assignee of this contract, entered upon the lands January 1, 1902, and drilled wells, and had removed large quantities of oil up to the time this action was brought, September 5, 1905.

Appellants brought this action by complaint in two paragraphs against said appellee to recover damages in the nature of waste of their inheritance. They joined Mary Rupel, the life tenant, and James Rupel and Rachel Artwine, their cotenants, as defendants, to answer as to their interests, if any, in and to the oil removed, or to the proceeds from the sale of it. The first paragraph set out in substance the source of appellant's title, the status of Mary Rupel as life tenant and that of James Rupel and Rachel Artwine as that of cotenants of plaintiffs, the execution of the contract by the life tenant, granting the right to one Wolf to explore the lands for oil and gas, the assignment of the contract to the Ohio Oil Company, the knowledge of the oil company of the status of Mary Rupel and of appellants when the contract was executed, and at the time of their entry, the entry upon the premises by the oil company, the drilling of wells thereon, and the removal by it of many thousands of barrels of oil. It alleged that the execution of the contract, the assignment to and the entry by the oil company, and the removal of the oil were without the knowledge or consent of appellants; that the oil company had not accounted to nor paid appellants for the oil, or any part of it, but had converted and appropriated it; that by reason of the wrongful taking of the oil from the land the reversion

of appellants was greatly injured and reduced in value, and great waste thereof was committed by the oil company. There was, in conclusion, a demand for judgment against the oil company in the sum of $100,000.

The second paragraph was similar in its allegations of facts, except that the source of title was not set out in full, nor was the contract, and the conclusion was that appellants had demanded an accounting, settlement and payment from the oil company, for the oil so taken, before bringing the action, which was refused; and that by reason of the appropriation of the oil, as alleged, appellants had been damaged by the oil company, and by reason thereof it was indebted to appellants in the sum of $100,000, for which judgment was demanded.

A separate demurrer for want of facts by the oil company was sustained to each paragraph of the complaint, as were joint demurrers for the same cause by the other three defendants, and upon plaintiffs' refusing to plead further, judgment was thereupon rendered against them. Errors are properly assigned on the rulings of the trial court on these demurrers.

Appellants' counsel have not stated in their brief any proposition or point, or cited authority, in support of their assignment of error, that the court erred in sustaining the demurrers of Mary Rupel, James Rupel and Rachel Artwine, and therefore, under the rules and decisions of this court, this assignment is deemed waived, and will not be considered.

1.

It remains only to determine whether the complaint, or either paragraph thereof, stated a cause of action against the Ohio Oil Company. It is the contention of counsel for appellees that it is within the rights of a life tenant to make a valid contract to permit the search of the substance of the estate for oil, and to profit therefrom when found. This contention is based on what seems to be the settled rule in this State, that oil and gas, under-

2.

neath the surface of the real estate, do not become the absolute property of the owner of the land until he has discovered them by exploring and mining his land, and reduced them to his dominion. This is so because of their supposed wandering and vagrant character. But this rule of 3. property does not in any way modify the general common law, that the ownership of the fee of the surface of the earth carries with it the right to the minerals beneath, and the consequent right to extract them. This right is exclusive in the owner of the fee. The life tenant in possession has no such right, and not having it he cannot of course grant it to another. 16 Cyc. 625; *Ohio Oil Co.* v. *Indiana* (1900), 177 U. S. 190, 20 Sup. Ct. 576, 44 L. Ed. 729.

Where oil underlies the surface of land, it cannot be denied that for the time it is physically a part of it. To recover it from the earth requires an assault on the integrity of the estate like, if different in degree, taking other minerals, and when recovered from the earth it is as much property as any other mineral in, on, or underlying the land, and when severed from its physical connection with the earth it becomes personal property as other minerals do. The owner of the fee, or one to whom he has granted 4. the right, may invade the substance of the inheritance to take one as well as the other. He may prevent one not entitled thereto from taking one from 5. the estate as well as the other, or where the waste or trespass has been committed he has his remedy in the one case as well as in the other. 27 Cyc. 629, 630.

In *Richmond Nat. Gas Co.* v. *Davenport* (1905), 37 Ind. App. 25, it was held that the owner of the fee might enjoin the life tenant in possession and her lessee from drilling for and removing oil and gas from the estate as waste. In that case it was said: ''It is settled by numerous decisions that the natural gas or the petroleum which may be under the surface and not reduced to the

actual possession of any person, constitutes a part of the land, and belongs to the owner thereof in such a sense that he has the exclusive right by operations upon his land to reduce such mineral substance to possession and use and enjoyment and to grant the privilege of doing so to other persons, though until so reduced to possession the mineral substance is subject to be taken by any other person, by proper operations upon his own land, and that a person in possession who has such exclusive right in particular land, as owner of the land or as lessee or grantee with the privilege of extracting such minerals, may by injunction prevent operations for such purpose by others who have not rightfully acquired the privilege from the owner of the land in fee. The taking of these minerals by a stranger by means of wells made without right for such purpose constitutes a trespass, damages for which cannot be definitely measured. And the taking by one lawfully in possession of the surface, with right to enjoy the income and profits, but not the owner of the fee and not having received from such owner the privilege so to take the minerals—that is, by a tenant of the land for years or for life—constitutes waste.''

It has been held in this State that one who has been granted by the owner of the fee the exclusive right to take oil and gas from the land may enjoin the invasion of the right by a stranger. *Indianapolis Nat. Gas Co.* v. *Kibbey* (1893), 135 Ind. 357; *Consumers Gas Trust Co.* v. *American Plate Glass Co.* (1904), 162 Ind. 393; *American Steel, etc., Co.* v. *Tate* (1904), 33 Ind. App. 504. It must necessarily follow that a like remedy would be available to the owner himself.

It is practically conceded by counsel for appellee that every owner of the fee has such a right in and control over the oil and gas underlying his land that the preventive remedy of injunction is his, but they contend that if he fails to deny access by the use of it he cannot assert a right to compensation after the oil and gas have been wrongfully re-

moved.   This must lead to a position unmaintainable—that an owner who is present and has knowledge of a threatened injury to his estate may prevent the injury, while an owner absent, with no knowledge of a threatened injury until after it has been fully accomplished, is remediless.   The statement of the proposition is in itself a refutation of its soundness.   The law is otherwise, and has long been so.

Anciently in England by the common law and early statutes the remedies for waste were the writ estrepement and prohibition of waste to prevent a threatened waste, and the writ of waste for the recovery of the estate and of damages for waste committed.   The ancient preventive remedies have given way to the more modern remedy of injunction, now available in our practice. The writ of waste to recover damages for waste committed was succeeded by the common-law action on the case in the nature of waste, which in turn has become our code action for damages for waste, or trespass in the nature of waste. 30 Am. and Eng. Ency. Law (2d ed.) 272-274; 22 Ency. Pl. and Pr. 1095 et seq.; §§288, 289 Burns 1908, §§286, 287 R. S. 1881.

At common law the reversioner might sue the life tenant for damages for waste, but as privity of estate between the parties was necessary to the maintenance of an action for waste, he might not sue one claiming under the life tenant or a stranger.   This rule, however, no longer prevails, and the modern action to recover damages may be maintained against the life tenant, a subtenant or a stranger.   22 Ency. Pl. and Pr. 1095, 1107, 1108, and notes.

In harmony with the rule that has always prevailed, it is held in this State that the reversioner may not only enjoin the commission of waste by the life tenant, but may recover damages for that already committed.   *Miller* v. *Shields* (1876), 55 Ind. 71; *Stout* v. *Dunning* (1880), 72 Ind. 343; *Robertson* v. *Meadors* (1880), 73 Ind.

43. Indeed the statute so provides specifically as to the action for damages. §§288, 289, *supra.*

Equity will give an account for past waste, and if it be of such a character that an action at law for damages will not give adequate relief, equity will give the remedy of account, even if an injunction may not be had. 30 Am. and Eng. Ency. Law (2d ed.) 300; 16 Cyc. 644; 22 Ency. Pl. and Pr. 1135.

The comparatively late case of *Bender* v. *Brooks* (1910), 103 Tex. 329, 127 S. W. 168, was an action to recover possession of a tract of land, and for damages for oil taken therefrom, and the same rule of property in oil in the earth that prevails generally in this State and elsewhere was recognized. In the course of the opinion the court said: "It is true that appellants, as owners of the land, have no specific title to the oil therein until it has been removed from the earth. * * * Appellants had the exclusive right as owners of the soil to take oil therefrom and the appellee by an invasion of their right and removal of the oil, no matter how innocently, could not acquire title thereto. It follows logically that since appellants owned the land from which Brooks extracted the oil, the oil so removed became and was the property of appellants so soon as it reached the surface, therefore, they had a right to recover their property or its value." It was further held in that case that an accounting should be taken to ascertain the damages.

The case of *Marshall* v. *Mellon* (1897), 179 Pa. St. 371, 36 Atl. 201, 35 L. R. A. 816, 57 Am. St. 601, while recognizing the inherent difference between oil and minerals in the earth, which prevents an absolute ownership in the former until it is taken possession of, held that with respect to the rights and interests of life tenants and remaindermen there is no departure from the common-law rule, that tenants for life only may not open new mines, or take minerals from the premises except in case of mines

Rupel *v.* Ohio Oil Co.—176 Ind. 4.

opened by the former owner, and that a life tenant could neither open oil and gas wells nor grant the right to another.

The case of *Williamson* v. *Jones* (1894), 39 W. Va. 231, 19 S. E. 436, 25 L. R. A. 222, is to the effect that a life tenant, or one claiming under him, may not drill wells and take oil from the estate, and when that is done the owner of the fee may enjoin the waste or trespass, and have an accounting for that committed. See, also, the further exhaustive consideration of the same case in *Williamson* v. *Jones* (1897), 43 W. Va. 562, 27 S. E. 411, 38 L. R. A. 694, 64 Am. St. 891. See, also, *Gerkins* v. *Kentucky Salt Co.* (1897), 100 Ky. 734, 39 S. W. 444, 66 Am. St. 370.

We believe the cases and books cited indicate the law applicable to the case made by the two paragraphs of the complaint under consideration in this case, and it follows that the trial court erred in sustaining the demurrer of appellee oil company to each of them.

We are asked to determine a question of estoppel of appellants by knowledge of the operations of the oil company on the land in question. This we decline to do. No such question is presented, but the contrary; for both paragraphs disavow knowledge of the fact on the part of appellants.

For the error before indicated the cause is reversed, with instructions to the trial court to overrule the demurrers of the Ohio Oil Company to each paragraph of the complaint.

## ON PETITION TO RECALL OPINION AND GRANT ORAL ARGUMENT.

Cox, J.—Appellee Ohio Oil Company has filed its petition asking that the opinion rendered in the cause be recalled, and that its petition for an oral argument, filed while the cause was pending in the Appellate Court, and addressed to that court and not ruled on, be granted, and that oral argument on the questions of law

involved be heard. This petition has been given due consideration. The cause was ably and exhaustively briefed by the learned counsel for appellee. All the briefs contemplated by law and the rules of this court were filed March 12, 1909, and appellee's petition for oral argument was not filed until July 19, 1909, more than nine months after submission of the cause. Oral arguments should be requested by written application within the time allowed for filing briefs, otherwise, the court in its discretion will refuse the application. This is the provision of rule twenty-six of this court. Petition to recall opinion and grant oral argument is therefore overruled.