MONON COAL COMPANY ET AL. *v.* RIGGS ET AL.

[No. 17,248. Filed October 6, 1944. Rehearing denied November 17, 1944. Transfer denied December 28, 1944.]

Will H. Hays, Hinkle C. Hays, Alonzo C. Owens, John S. Taylor, J. Olias Vanier, John T. Hays, Will H. Hays, Jr., of Sullivan, for appellant.

Charles H. Bedwell and Jesse E. Bedwell, both of Sullivan, and Cooper, Royse, Gambill & Crawford, of Terre Haute, for appellees.

DOWELL, C. J.—This was an action by appellees to quiet title to the oil and gas underlying the surface of certain lands in Sullivan County, Indiana. The appellant, Monon Coal Company, by cross-complaint declared its ownership in the oil and gas and sought to quiet its title thereto. The interest of appellant, Bankers Trust Company, arises by virtue of a mortgage on what-

ever interest appellant coal company has in the land here concerned.

The cause was tried to the court resulting in finding and judgment for the appellees.

Error assigned is the overruling of the motion for a new trial which is in 22 specifications, the first four of which assail the decision of the court as contrary to law and as not sustained by sufficient evidence, the remaining specifications being addressed to alleged error in the admission of evidence.

On January 14, 1904, the appellees by their warranty deed of that date, conveyed to the New Pittsburgh Coal and Coke Company "all the coal and fireclay and minerals underlying the surface" of certain lands in Sullivan County particularly described in deed. The interest of appellant, Monon Coal Company, appears as that of a successor in title to the above named grantee.

The question presented to this court by the first four specifications of the motion for a new trial is the construction to be placed upon the deed of severance hereinabove referred to, appellants contending that the language thereof conveying "all the coal and fireclay and minerals underlying the surface" of the lands described sufficiently conveyed to appellant coal company's predecessor in title the oil and gas thereunder, appellees urging that it did not.

Appellants' contention that oil and gas underlying the surface of lands are "mineral" is fairly supported by the weight of authority. *Rupel* v. *Ohio Oil Co.* (1911), 176 Ind. 4, 95 N. E. 225, Ann. Cas. 1913 E 836; *Kahle* v. *Crown Oil Co.* (1913), 180 Ind. 131, 100 N. E. 681; *Campbell* v. *Smith* (1913), 180 Ind. 159, 101 N. E. 89; Words and Phrases, Perm. Ed. Vol. 27, p. 214 et seq. That these substances, however, are minerals with peculiar attributes not common to

other minerals because of their fugitive nature or vagrant habits and may be classed by themselves as minerals *ferae naturae* is also too well settled to admit of argument. *The State* v. *The Ohio Oil Co.* (1898), 150 Ind. 21, 49 N. E. 809; *The People's Gas Company* v. *Tyner* (1891) ,131 Ind. 277, 31 N. E. 59. So long as they remain in the ground unsevered they are a part of the real estate and as such belong to the owner of the land as long as they are on it or in it or subject to his control. *Kahle* v. *Crown Oil Co. supra; Rupel* v. *Ohio Oil Co. supra.* Under such conditions he has the exclusive right to use his land to *reduce them to possession* and such right is a property right which he may sell or grant to another. That the absolute *title* to such oil and gas is vested in the owner of the land and may be conveyed by a simple deed of severance is, however, open to question in this jurisdiction. In the case of *The State* v. *The Ohio Oil Co.* (1898), 150 Ind. 21, 32, the Supreme Court of this State asserted:

> "We therefore hold that the title to natural gas does not vest in any private owner until it is reduced to actual possession."

The principle therein enunciated was followed in the case of *Heller* v. *Dailey* (1902), 28 Ind. App. 555, 561, wherein it was stated:

> "If by such general terms all of a specified solid mineral, as coal, in and under the land were granted, it would be a grant of real estate, *Plummer* v. *Hillside etc., Co.,* 160 Pa. St. 483, 28 Atl. 853; but because of the fluidity and fugitiveness of petroleum and natural gas the absolute ownership of these mineral substances within the land can not be acquired without reducing them to actual control; so that a distinction must be and is made between these elusive minerals in and under the ground and the solid minerals in place in the earth. Therefore, a grant of all the oil and gas in and

under a tract of land is not a grant of any particular specific substance as would be a grant of the coal in and under certain land.

"The owner of land is not by virtue of his proprietorship thereof the absolute owner of the oil and gas in and under it, in its free and natural state, not yet reduced to actual control of any person . . ."

Such was the holding in the case of *Campbell* v. *Smith* (1913), 180 Ind. 159, 177, 101 N. E. 89, and in that of *Fairbanks* v. *Warrum* (1914), 56 Ind. App. 337, 347, 104 N. E. 983, 104 N. E. 1141, wherein it was said that the owner of the land was the owner of the gas and oil beneath it only in a qualified sense and only in the sense that he had the exclusive right by operations on such land to explore for the gas and oil and to reduce it to possession and to a consequent absolute ownership.

It follows, therefore, that absolute title to oil and gas *in situ* cannot pass by an instrument of conveyance since the utmost that can be conveyed is limited to the exclusive right to explore the land for such gas and oil, to reduce it to possession and thereby acquire an absolute ownership. Such an estate is not a corporeal interest but is in the nature of an *incorporeal hereditament*.

Appellant cites numerous authorities to the effect that oil and gas are minerals subject to conveyance and it is to be admitted that in certain jurisdictions the landowner's absolute title to oil and gas *in situ* is recognized and established as well as his right to pass his title thereto by an instrument of conveyance. *Hamilton* v. *Foster* (1921), 272 Pa. 95, 116 A. 50.

The doctrine of absolute title however has not the sanction of law in Indiana.

Moreover, even in those jurisdictions it has been held that where the grantor, instead of using the words "oil and gas" to indicate the subject matter of the grant uses the term "minerals" it at once becomes a question as to whether oil and gas were intended to be included. *Silver* v. *Bush* (1906), 213 Pa. 195, 62 A. 832.

An able and comprehensive study of the law of various jurisdictions as it pertains to the property rights of the landowner in oil and gas *in situ* may be found in Summers' work on the subject, ch. 62, pp. 121, 131, Vol. 1.

In the light of all of the aforegoing, therefore, the language of the deed of severance here concerned becomes uncertain and ambiguous and resort must be had to the rules of construction applicable in such cases which are in accordance with the rules applicable to conveyances generally. 36 Am. Jur. 303; 40 C. J. 973; Summers' Oil and Gas, Vol. 1, p. 326 et seq.

The true intent of the parties, grantors and grantee, cannot be gathered from a fair consideration of the entire instrument. Notably in absence therefrom is any reference to rights of exploration for oil and gas or to any of the numerous specialized operations peculiar to that industry. On the other hand numerous grants are contained therein of rights peculiar to the mining of coal.

Under the circumstances of the instant case, therefore, the court below had a right to place itself in the position of the parties at the time the deed of severance was executed and to consider the surrounding circumstances in order to ascertain the intent of the parties and to receive parol evidence in aid thereof. *Hamlyn*

v. *Hamlyn* (1937), 103 Ind. App. 333, 7 N. E. (2d) 644; *Lassiter* v. *Goldblatt Bros.* (1942), 220 Ind. 215, 41 N. E. (2d) 803.

Aside from the stipulations of the parties the only evidence in the trial below was offered by the appellees. Among other matters it revealed that at the time of execution and delivery of the deed of severance the original grantee was engaged exclusively in the mining of coal and had never explored for oil in Sullivan County; that the original grantee, New Pittsburgh Coal and Coke Company, permitted acts and operations on the land inconsistent with any claim of right to oil and gas in that in the year 1909, five years after the execution and delivery of the deed of severance it permitted appellee, James R. Riggs, to drill for oil on the premises, without objection, and that the general manager of the company cooperated with appellee by furnishing a survey in order that the drillers could avoid the main entries of the company's coal mine; that appellant, Monon Coal Company, likewise, in the year 1919, permitted appellee, without objection, to drill for oil upon the land and asserted no adverse claim or interest; that in negotiations preliminary to the execution and delivery of the deed of severance the original grantee solicited appellee to sell his coal rights only and that in all such negotiations the subject matter was coal and incidentals to the projected mining thereof and that no mention was made of oil and gas.

Such evidence and the inferences flowing naturally therefrom were sufficient to sustain the decision of the court below.

In the light of the foregoing there was no error in the admission of the parol evidence, contentions as to

which form the basis of the remaining specifications of appellants' motion for new trial.

Affirmed.

Note.—Reported in 56 N. E. (2d) 672.

## ON PETITION FOR REHEARING.

Dowell, C. J.—On petition for rehearing appellants, in effect, assail our apparently anomalous position in holding that *absolute* title to oil and gas *in situ* does not vest in any person and, nevertheless, at the same time affirming as without error the judgment quieting title in fee simple thereto in appellees.

If our conclusions, in the face of this assertion, appear unreasoned it is, perhaps, because we eliminated as unnecessary in our opinion any discussion of the principles governing in cases where appellants' rights have been fairly determined.

In the case of *Ward* v. *Tuttle* (1913), 54 Ind. App. 674, 102 N. E. 405, which was an appeal from a judgment quieting title this court said:

"But, although the court may have erred in its finding in favor of appellee on his cross-complaint, such error could not avail appellant, for, since the court found against appellant on the complaint, and there was such evidence supporting the finding that this court cannot disturb it, appellant could not recover in any event, and he cannot complain because the court rendered judgment in favor of appellee, since the court's findings show that he was not entitled to the land. Since there is no error which can affect appellant, this court will not reverse the judgment of the lower court and will leave the parties where it found them."

In that case the court below, by its judgment, quieted title in fee simple in the appellee who was shown to have had only a life estate therein.

And again, in the case of *Rosenberg* v. *American Trust, etc., Bank* (1927), 86 Ind. App. 552, 156 N. E. 411, this court said:

"We are wholly unable to understand that it makes any difference to appellants where the title is when it is determined that they have no lien on the real estate. When the merits of the case so far as they affect appellants' rights are fairly determined appellants may not further complain." Citing §725 Burns' 1926 (§2-3231, Burns' 1933) providing that no judgment shall be reversed where it shall appear that the merits of the cause have been fairly tried and determined in the court below.

In the instant case it is shown by the findings of the court below that appellants have no interest in the oil and gas. If the judgment following erred on the side of liberality toward appellee that error is not available to appellants in this appeal.

The petition for rehearing is denied.

NOTE.—Reported in 57 N. E. (2d) 598.